UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 10-29-DLB

ROGER GALEN VALLANCE                                   PLAINTIFF

VS.                 **MEMORANDUM OPINION AND ORDER**

SERVICE EMPLOYEES' INTERNATIONAL UNION,
District 1199, Health Care and Social Union          DEFENDANT

* * * * * * * * *

Plaintiff Roger Galen Vallance commenced this action against Defendant Service Employees' International, District 1199, alleging violations of the National Labor Relations Act, 29 U.S.C. § 158(b)(1). Specifically, Plaintiff alleges Defendant breached its duty of fair representation in processing Plaintiff's grievance against his employer, Ashland Hospital Corp. d/b/a King's Daughters Medical Center. This matter is presently before the Court on Defendant's Motion for Summary Judgment. (Doc. # 14). After reviewing the briefs of both parties (Docs. # 14-1, 17, 18) and all evidence in the record, the Court concludes that there are no genuine issues of material fact and that Defendant did not breach its duty of fair representation as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working at King's Daughters Medical Center ("King's Daughters") in the Spring of 2005 as a custodian in the hospital's Environmental Services department.

1

At that time, he also joined Defendant Service Employees' International Union, District 1199 ("Union"), where he maintained membership throughout all times relevant to this matter.

### A. The Mechanic Position

In the Spring of 2008, King's Daughters posted a job opening for a mechanic position in its Plant Operations department. Pursuant to the collective bargaining agreement ("CBA") between Defendant and King's Daughters, employees were able to bid on the position, and the position was awarded to the bidding employee with the most seniority who also passed an aptitude test, known as the Bennett Mechanical Comprehension Test ("BMCT"). The mechanic position was ultimately awarded to Mr. Jamie Moore on June 2, 2008.

On June 18, 2008, King's Daughters notified Mr. Moore that an error occurred in grading his test and that he had actually failed. As a result, King's Daughters removed Mr. Moore from the position and returned him to his previous position. On June 20, 2008, King's Daughters awarded the mechanic position to Plaintiff, the most senior bidder who passed the BMCT. Plaintiff began working in the new position on July 20, 2008.

In response to his removal, Mr. Moore filed a grievance with Defendant which was ultimately submitted to binding arbitration pursuant to the CBA. At the arbitration hearing, King's Daughters asserted that Mr. Moore was properly removed because he failed the BMCT. In addition, a prior arbitrator's ruling affirmed King's Daughters' use of the BMCT in awarding positions. Therefore, King's Daughters argued, Mr. Moore was precluded from arguing his removal was improper.

Mr. Moore was represented by Ms. Joyce Gibson, an employee of Defendant, at his arbitration hearing. Based on testimony presented, Ms. Gibson argued that Mr. Moore's grievance was distinguishable from the prior arbitrator's ruling that affirmed King's Daughters' use of the BMCT. Mr. Moore's grievance was not about whether King's Daughters properly relied on the BMCT, but whether his removal was based on an outdated policy that prohibited family members from working in the same department.[1] In addition, the BMCT did not accurately portray Mr. Moore's abilities because he had already proven that he was capable of performing the duties of a mechanic when he worked in that position from 1986 to 1987.[2] Last, Mr. Moore detrimentally relied on being promoted when he spent $200 on mechanic uniforms and passed up an opportunity for another position. For all of these reasons, the arbitrator agreed that Mr. Moore's case was distinguishable from the prior arbitration. The arbitrator ultimately ruled that King's Daughters acted capriciously in removing Mr. Moore from the mechanic position and directed that Mr. Moore be reinstated.

**B.    Plaintiff's Grievance Process**

In March of 2009, Plaintiff approached the Director of Plant Operations to determine whether Mr. Moore's arbitration decision would have an effect on Plaintiff's own position as a mechanic. The Director told Plaintiff that he would be moved back to his old position. On March 24, 2009, Plaintiff was transferred to his previous position in Environmental

---

[1] Mr. Moore's mother also worked in Plant Operations.

[2] Plaintiff disputes that Mr. Moore worked in a mechanic position during this time. Instead, Plaintiff argues that Mr. Moore worked in Plant Operations for 89 days in a temporary capacity, but did not fulfill maintenance duties. He offers no facts to support this assertion and acknowledges in his deposition, "Now, what [Mr. Moore] done [in Plant Operations], I don't know."

3

Services and his pay was decreased.

The next day, Plaintiff filed a grievance with Defendant requesting that he be reinstated as a mechanic or placed in a similar position. Ms. Paula Brainard, an employee of Defendant, represented Plaintiff throughout the grievance process. At the first level of the grievance process, Plaintiff and Ms. Brainard were told by management, after a five minute meeting, that nothing could be done.

At the second level, Plaintiff and Ms. Brainard again met with the same member of management. In response to Plaintiff's concerns, management sent Plaintiff a letter outlining King's Daughters rationale for moving Plaintiff out of the mechanic position. The letter stated that the arbitrator's decision concerning Mr. Moore's grievance required King's Daughters to reinstate Mr. Moore into the position occupied by Plaintiff. No other mechanic positions were available, leaving King's Daughters with no other option but to return Plaintiff to his position in Environmental Services.

At the third level of the grievance process, Ms. Brainard argued to the management representative that Plaintiff should be allowed to continue his work as a mechanic because he worked in that capacity for eight months without incident and was improperly demoted. The management representative replied that it would not be possible to reinstate Plaintiff, to which Ms. Brainard said nothing.

After the third level meeting with management, Ms. Brainard decided not to take Plaintiff's grievance to arbitration, despite Plaintiff's request. Ms. Brainard believed that pursuing Plaintiff's grievance any further would be both futile and a waste of resources because Plaintiff's position had been awarded to Mr. Moore by another arbitrator. On May 14, 2009, a representative of Defendant again responded to Plaintiff that she would not

recommend that Plaintiff's grievance be arbitrated. The response stated, "it is clear [that] we could not win on the merits of [Plaintiff's] case in an arbitration." Plaintiff appealed this decision to Defendant's Appeals Committee of its Executive Board at a hearing held September 24, 2009. Plaintiff was subsequently notified that "due to the evidence presented . . . the Committee has decided not to arbitrate [Plaintiff's] grievance."

Plaintiff also filed unfair labor practice charges with the National Labor Relations Board ("NLRB") against both King's Daughters and Defendant. On June 17, 2009, Region 9 of the NLRB notified Plaintiff that his charges against King's Daughters and the Union were dismissed because the Region found insufficient evidence of any violation. Plaintiff appealed this decision to the General Counsel of the NLRB, who affirmed Region 9's decision to dismiss. The General Counsel ("GC") recognized that Defendant owes employees a duty of fair representation, however that duty does not necessarily require it to process a grievance to arbitration. The GC concluded that no evidence suggested Defendant pursued Plaintiff's grievance in an arbitrary, discriminatory, or bad-faith manner, and that Defendant's refusal to pursue Plaintiff's grievance to arbitration was based on the arbitrator's decision that favored Mr. Moore. The GC expounded

> Despite the results of the employee's arbitration, the Union attempted to negotiate with the Employer another alternative for you. However, the Employer determined that your demotion was its only option under the arbitration award. In these circumstances, there is insufficient evidence to establish that Union's refusal to arbitrate your grievance was based on any animus or unlawful considerations under the Act. Moreover, there is insufficient evidence to support that the Union treated you differently than the other employee. Rather, the evidence indicated that the Union attempted to reduce the negative impact of the Arbitrator's decision; however, your demotion was beyond their control. Accordingly, further proceedings were unwarranted.

5

### C. Plaintiff's Complaint and Factual Allegations

Plaintiff filed this action on March 24, 2010, claiming that the Union negligently and intentionally breached its duty of fair representation. To support his claim for negligent breach, Plaintiff contends that Ms. Brainard, the Union employee that represented him through the grievance process, failed to provide adequate representation because she "spent no time in preparing for the upper level hearings . . . , continually attempted to dissuade [Plaintiff] from pursuing the matter, spoke very little . . . during the hearings," and failed to discuss possible alternative positions for Plaintiff in Plant Operations. To support his claim for intentional breach, Plaintiff alleges that Ms. Brainard had a personal relationship with Mr. Moore's mother, which influenced her decision not to pursue Plaintiff's grievance. Ms. Brainard was also fully aware that Plaintiff would willingly accept a similar position in Plant Operations, but failed to raise that issue with management. Plaintiff also alleges that a Union representative presented false statements at Mr. Moore's arbitration hearing to persuade the arbitrator to rule in Mr. Moore's favor, despite knowing that Plaintiff would be adversely affected if Mr. Moore was reinstated. According to Plaintiff, when he complained about the quality of representation he was receiving from the Union, he became the victim of a smear campaign led by Union representatives.

According to Plaintiff, Ms. Brainard and Mr. Moore's mother were close friends who frequently vacationed together. However, when asked if he knew anything more about their relationship, Plaintiff responded that he did not. Ms. Brainard's affidavit attached to Defendant's Motion for Summary Judgment states that the decision not to take Plaintiff's grievance to arbitration was in no way based upon her relationship with Mr. Moore's mother.

Plaintiff also testified extensively about the "lies" that were presented by Defendant's representative, Ms. Gibson, at Mr. Moore's arbitration hearing. Plaintiff testified that Mr. Moore was in fact not a mechanic in the past, as Ms. Gibson argued. Instead, Mr. Moore worked in Plant Operations for 89 days in a temporary capacity, but did not fulfill maintenance duties, according to Plaintiff. Plaintiff offered no factual basis for this assertion and acknowledged in his deposition, "Now, what [Mr. Moore] done [in Plant Operations], I don't know." Additionally, Plaintiff challenged the grounds on which Ms. Gibson distinguished Mr. Moore's situation from the prior arbitrator's ruling, arguing that the employees' situations were in fact similar.

Plaintiff was also questioned at length in his deposition about the alleged "smear campaign" waged against him by Union representatives. Plaintiff testified that Ms. Gibson announced at a Union meeting that Plaintiff would be the next person to file decertification papers against the Union. Plaintiff did not attend this meeting or hear the comment directly. Instead, an employee who attended the meeting told another employee about the comment, who then relayed it to Plaintiff. Ms. Gibson adamantly denies making any such statement.

## II.   ANALYSIS

### 1.   Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw

7

all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must produce evidence showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### 2. Plaintiff's Claims are not Preempted by Section 301

Contrary to Defendant's contention, Plaintiff's claims are not preempted by Section 301 of the Labor Management Relations Act ("LMRA"). In Vaca *v. Sipes*, 386 U.S. 171, 177 (1967), the Supreme Court noted "it is now well established that, as the exclusive bargaining representative of the employees . . . , the Union [has] a statutory duty [to] fairly represent all . . . employees." This duty was originally created over 20 years before the decision in *Vaca v. Sipes* in a series of cases involving unions certified as the exclusive bargaining representatives under the Railway Labor Act. *Id*. The duty was soon extended to unions certified under the LMRA. *Id.* (citing *Ford Motor Co. V. Huffman*, 345 U.S. 330, 337 (1953)).

The Supreme Court held that suits alleging a breach of the duty of fair representation were not preempted. *Breininger v. Sheet Metal Workers Intern. Ass'n Local Union No. 6*, 493 U.S. 67, 74 (1989) (citing *Vaca*, 386 U.S. at 177). Instead, such a claim is cognizable in the first instance in federal court. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 49 (1998) (citing *Vaca*, 386 U.S. at 177-83). The Supreme Court offered two justifications for this rule. *Vaca*, 386 U.S. at 181. First, the duty of fair representation was developed far before the NLRB acquired statutory jurisdiction over union activity. *Id*. The purpose of a fair representation claim is to give redress for the wrong done to an individual employee, while the Board's unfair labor practice jurisdiction is aimed at effectuating the policies of federal labor law. *Id*. at 182. Second, the NLRB's General Counsel has unreviewable discretion to refuse to institute unfair labor practice charges. *Id.* If employees were limited to possible redress solely from the NLRB, some employee grievances may go unheard, and the decision not to bring unfair labor charges would never be reviewed. *Id.*

Based on clear Supreme Court precedent, Plaintiff's claims alleging a breach of the duty of fair representation are not preempted. Therefore, this Court may properly assert jurisdiction over Plaintiff's claims.

### 3. Defendant is Entitled to Judgment as a Matter of Law

Defendant argues that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law as to both of Plaintiff's claims. For the reasons set forth below, this Court agrees.

Unions owe employees a duty of fair representation. *Vaca*, 386 U.S. at 177. Under this duty, the union is required to represent "all members of a designated unit" and has a "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*. (citing *Humphrey v. Moore*, 375 U.S. 335, 342 (1964)). The duty is breached "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. Furthermore, the plaintiff cannot merely characterize a union's conduct as arbitrary, discriminatory, or in bad faith to withstand summary judgment. *Summers v. Keebler Co.*, 133 F. App'x 249, 253 (6th Cir. 2005). "Rather, to meet his burden of proof as to the union's breach of its duty of fair representation, a plaintiff must establish by substantial evidence that the union acted arbitrarily, discriminatorily or with bad faith." *Id*. (quoting *Damphousse v. Great Lakes Steel*, 219 F. Supp. 2d 833, 837 (E.D. Mich. 2002)).

### A. Defendant's Actions Were Not Arbitrary

A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotations and citations omitted). Even if the judgment is wrong, *Marquez*, 525 U.S. at 45-46, negligent or mistaken, it should not be considered arbitrary. *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983). In describing the plaintiff's burden, the Sixth Circuit holds that the plaintiff has the "difficult task of showing that the union's actions are wholly irrational." *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538-39 (6th Cir. 2003)

(internal citations and quotations omitted). Moreover, the court must be highly deferential when reviewing the substantive evidence of a union's performance. *O'Neill*, 499 U.S. at 78.

While the union must not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, an employee does not have a right to take every grievance to arbitration. *Vaca*, 386 U.S. at 191. Instead, the union must make a calculated decision about the merits of a particular grievance to determine whether it should be pursued. *Id*. *See Driver v. U.S. Postal Service, Inc.*, 328 F.3d 863, 869 (6th Cir. 2003) (holding that "a union's decision not to pursue a grievance, based on thorough investigation of the employee's complaint and a reasonable calculation that the complaint does not merit further use of the grievance procedure, does not necessarily violate the union's duty of fair representation."). Citing *Vaca*, the Seventh Circuit held that the union must "account [for] tactical and strategic factors such as its limited resources and consequent need to establish priorities . . . as well as its desire to maintain harmonious relations among the workers and between them and the employer." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 362 (7th Cir. 1997).

Defendant argues that its actions were reasonable and rationale. As a party to the CBA, Defendant was bound by the arbitrator's decision to reinstate Mr. Moore. The secondary effect of the decision was that Plaintiff was removed from the mechanic position so that Mr. Moore could be reinstated. If Defendant would have pursued Plaintiff's grievance arising from his removal, Defendant would have essentially challenged a binding arbitration decision that it had already fought to achieve. Additionally, Defendant did not

have the authority under the CBA to bargain for the relief that Plaintiff requested. In fact, Plaintiff admitted to this point in his deposition. If King's Daughters would have moved Plaintiff to another position, as Plaintiff demanded, without following the procedures outlined in the CBA for filling a vacant position, other employees' rights under the CBA would have potentially been violated and more grievances would likely have been filed. In short, Defendant argues that the record shows its decision was based on the binding effect of a prior arbitration decision and the fact that it did not have the authority to pursue the remedy Plaintiff requested.

Plaintiff responds that material facts could lead a reasonable juror to conclude Defendant's actions were arbitrary. In support, Plaintiff cites to a letter from a Union delegate claiming Ms. Brainard told him that she chose not to pursue Plaintiff's grievance because she did not want to upset officials of Defendant. Plaintiff failed to mention that the letter also states that Ms. Brainard chose not to pursue Plaintiff's grievance because the mechanic position "was not his to begin with" and she had already helped Mr. Moore return to the mechanic position. As additional support, Plaintiff argues that Ms. Brainard's less than zealous pursuit of Plaintiff's claim, coupled with her relationship with Mr. Moore's mother shows that Defendant arbitrarily decided not to pursue Plaintiff's grievance.

Viewing the facts in a light most favorable to Plaintiff, this Court can not conclude that Plaintiff has met the difficult task of showing that Defendant's actions were wholly irrational. The Supreme Court requires courts to be highly deferential when reviewing the union's performance. *O'Neill*, 499 U.S. at 78. Here, the evidence shows that Defendant made a calculated decision not to pursue Plaintiff's grievance because Defendant concluded Plaintiff's grievance was without merit. Defendant's conclusion was based on

two significant facts. First, in pursuing Plaintiff's grievance to have him reinstated in to the mechanic position, Defendant would have essentially had to challenge Mr. Moore's reinstatement. Defendant already argued and won an arbitration decision in favor of Mr. Moore. It would have been an ineffective use of resources if Defendant later argued against that binding decision it had earlier sought to achieve.

Second, Defendant did not have the authority to demand that Plaintiff be placed in a position similar to the mechanic position. Only King's Daughters determined who should be placed in a vacant position; Defendant could not demand that King's Daughters act in a specific way. While Plaintiff argues Defendant did not put sufficient effort into his grievance, no amount of effort could change Defendant's ability to succeed on behalf of Plaintiff. Ultimately, Defendant determined that pursuing Plaintiff's grievance would be futile. Even if this decision were wrong, negligent, or mistaken, this is not enough to show Defendant breached the duty of fair representation. *Marquez*, 525 U.S. at 45-46; *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983). As the Sixth Circuit held in *Driver*, it is appropriate for a union to not pursue a grievance because it believes the grievance has no merit. *Driver*, 328 F.3d at 869.

While Plaintiff's argument that Ms. Brainard did not pursue Plaintiff's grievance because she did not want to upset her superiors has some level of curb appeal, it is insufficient to create a jury question. As proof, Plaintiff references a letter from a Union delegate that heard Ms. Brainard offer this rationale. However, Plaintiff's emphasis on this explanation is misplaced. In the entirety of the letter, it is explained that Ms. Brainard's decision not to pursue Plaintiff's grievance was based on other considerations as well, including those that this Court has already found to be reasonable. Even if a part of Ms.

Brainard's decision was based on her desire not to upset officials of Defendant, that evidence does not show that Defendant's actions were wholly irrational. As a result, Plaintiff has failed to show that Defendant's actions were unreasonable and arbitrary.

### B. Defendant's Actions Were Not Discriminatory

The Sixth Circuit recognizes that it is difficult to provide a precise definition of "discriminatory." *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). The Supreme Court held that the plaintiff does, however, have the duty to produce substantial evidence of discrimination "that is intentional, severe, and unrelated to a legitimate union objective." *Id.* (quoting *Amalgamated Ass'n of Street, Electrical Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 301 (1971)). It is not enough to prove that the union's conduct merely favored one group over another. *Id.* Instead, the discrimination must be "invidious," meaning that it is "based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus." *Simo v. Union of Needletrades, Indus. & Textile Emps.*, 322 F.3d 602, 618-19 (9th Cir. 2003) (quoting *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1359-60 (10th Cir. 1994)).

Plaintiff contends that Defendant's actions were discriminatory because Defendant argued for a remedy that violated the CBA at Mr. Moore's grievance but was unwilling to do the same on behalf of Plaintiff. However, Plaintiff's attempt to show disparate treatment on this basis is unfounded. Defendant did not argue that King's Daughters should ignore the CBA and reinstate Mr. Moore, as Plaintiff requested Defendant argue on his behalf. Instead, Defendant argued that Mr. Moore was removed from the position based on an

outdated policy. Additionally, the CBA provision that required applicants to pass the aptitude test before they were eligible for the mechanic position was not controlling in Mr. Moore's case. Instead, Defendant argued that Mr. Moore had proven that he was qualified for the position based on his prior, temporary experience and, therefore, should be reinstated to the mechanic position. These arguments in no way show that Defendant willingly sought a remedy for Mr. Moore that violated the CBA.

Although Defendant treated Mr. Moore and Plaintiff differently to some extent, the difference in treatment was not invidious. Defendant pursued arbitration for Mr. Moore, but refused to do so for Plaintiff. However, a union member does not have a right to have his grievance pursued to arbitration. *Vaca*, 386 U.S. at 191. Other than proving a disparity in treatment, Plaintiff has failed to offer proof that Defendant's actions were intentional and unrelated to a legitimate union objective. *See Merritt*, 613 F.3d at 619. Instead, the evidence shows that Defendant pursued Mr. Moore's grievance because it believed Mr. Moore was qualified for the mechanic position. Defendant then chose not to pursue Plaintiff's grievance because it had no merit. While Mr. Moore and Plaintiff certainly received different amounts of support from Defendant, the differences were not based on an impermissible classification or any animus towards Plaintiff. Defendant's actions, therefore, were not discriminatory.

Plaintiff also argues that Defendant waged a smear campaign against Plaintiff, which serves as proof of discrimination. However, the only evidence in the record of any smear campaign is rank hearsay. Plaintiff testified in his deposition that he was told by a co-employee that another co-employee heard representatives of Defendant make comments about Plaintiff at a Union meeting. Hearsay evidence cannot be considered on

a motion for summary judgment. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994); *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969); *see also Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Applying this rule, the record is devoid of evidence that may be considered to prove a smear campaign ever occurred.

### C. Defendant's Actions Were Not Conducted in Bad-Faith

Union actions are conducted in bad faith if they are made with "improper intent or motive." *Bowerman v. Int'l Union, United Automobile, Aerospace and Agricultural implement Workers of America, Local No. 12*, 646 F.3d 360, 368 (6th Cir. 2011). Additionally, bad faith may include "fraud, deceitful actions, or dishonest conduct," but the Supreme Court suggests that the Union representative must be aware that his statements or representations are false at the time they were made. *Summers*, 133 F. App'x at 253 (citing *Humphrey v. Moore*, 375 U.S. 335, 348 (1964) (holding that statements made by Union representative were not fraudulent, deceitful, or dishonest because the representative made those statements based on information supplied to him and that he believed was true)). In short, if allegations of bad faith are based on comments made by a union representative, the subjective intent of the union representative is the relevant consideration.

There is no evidence to suggest that Defendant acted in bad faith. Plaintiff argues that Ms. Brainard's relationship with Mr. Moore's mother shows that Ms. Brainard was compelled to protect Mr. Moore at the expense of Plaintiff. While Plaintiff has sufficiently proven that a relationship existed between Ms. Brainard and Mr. Moore's mother, he has

16

offered no evidence to suggest that the relationship had an impact on Ms. Brainard's decision not to pursue Plaintiff's grievance. Defendant did, however, offer an affidavit from Ms. Brainard stating, "[t]he decision not to take the grievance of [Plaintiff] to arbitration, [sic] was not base [sic] upon my relationship with the mother of Jamie Moore." Without any facts showing that this relationship impacted Ms. Brainard's actions, it is improper for this Court to infer bad faith from the relationship alone.

Additionally, Plaintiff contends that Ms. Gibson, an employee of Defendant, lied at Mr. Moore's arbitration to achieve a successful outcome. The parties clearly dispute whether Ms. Gibson's statements were truthful. Assuming, *arguendo,* that the statements were untruthful, Plaintiff has failed to produce any evidence to suggest that Ms. Gibson intended for her comments to be deceitful. Merely proving that Ms. Gibson's statements may have been false is not enough to prove bad faith. *See Humphrey*, 375 U.S. at 348. All of the evidence in the record shows that Ms. Gibson relied on testimony presented at Mr. Moore's arbitration to argue on Mr. Moore's behalf. Without any proof that Ms. Brainard knew her arguments were not true, Plaintiff has failed to offer sufficient evidence for a reasonable juror to conclude that Defendant acted in bad faith.[3]

### III. CONCLUSION

For all of these reasons, the Court concludes that there are no genuine issues of material fact and that Defendant has not breached its duty of fair representation as a matter of law. Accordingly,

---

[3] Defendant also argues that Plaintiff's claims are barred by the six-month statute of limitations, however the Court need not adjudicate that issue because it has reached a decision on the merits of the claims.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 14) be, and is hereby **GRANTED**.

This 20th day of October, 2011.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\Ashland\0-10-29 Memo Opinion and Order granting MSJ.wpd